UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN RE:  ANDREA N.  MATKOVIC,
        Debtor

Case No. 04-13723
Chapter 7
Judge JoAnn C. Stevenson

_____

HOWARD LaDUKE, JR.,
        Plaintiff

Vs.

ANDREA N. MATKOVIC,
        Defendant

_____

**COMPLAINT TO DETERMINE
DISCHARGEABILITY OF INDEBTEDNESS**

      Howard J. LaDuke, Jr. by his attorneys, UAW-GM Legal Services Plan, hereby pleads as follows:

**GENERAL ALLEGATIONS**

      1.  This is a complaint to determine the dischargeability of certain indebtedness owed to the Plaintiff, Howard J. LaDuke, Jr.(hereafter "LaDuke"), by the Defendant, Andrea N. Matkovic (hereafter "Matkovic").  This complaint is filed pursuant to rule 7001(6) of the Rules of Bankruptcy Procedure.

      2.  This court has jurisdiction in this adversary proceeding pursuant to 28 USC 157 and 1334 since this proceeding arises in the above-captioned Chapter 7 case currently pending in this federal judicial district.  This adversary proceeding is a core proceeding under 28 USC 157(b)(2)(1).

      3.  The Plaintiff is an individual who resides in Beaverton, Gladwin County, Michigan.

4. The Defendant is an individual who resides in Lansing, Ingham County, Michigan.

5. Upon information and belief, Defendant Matkovic and Anthony Guerrero (hereafter "Guerrero") acquired real property commonly know as 1604 Biltmore Boulevard, Lansing, Michigan as joint tenants in 2003 and commenced living together at that address.

6. On or about November 8, 2004, the Defendant commenced this bankruptcy case by filing a voluntary petition with this Court under Chapter 7 of the Bankruptcy Code.

7. Plaintiff LaDuke suffers from a bi-polar disorder and has been on extended disability from his employment since 1994.

8. In early 2004, Plaintiff LaDuke contacted Mortgage Hotline, Inc., d/b/a American Mortgage Decisions (hereafter referred to as "AMD") for the purpose of obtaining a home equity loan of approximately $13,000, dealing primarily with AMD agent Defendant Matkovic.

9. At the time Plaintiff contacted AMD in 2004, he owed approximately $49,000 on a first mortgage on his home (hereafter referred to as "premises") which is situated in Gladwin County, Michigan more fully described as follows:

> Lots 422 and 423, Whitney Beach No. 8, Hay Township, Gladwin, Michigan.

10. At the time Plaintiff first contacted AMD in 2004, twice the State Equalized Value of the premises was $94,714.

11. Prior to March 3, 2004, Matkovic requested, and LaDuke provided,

2

personal financial information, and details regarding his disabling mental health problems, including lapses in short term memory and an inability to handle his financial affairs.

12. Upon information and belief, Matkovic provided LaDuke's financial and mental health information to Anthony Guerrero(hereafter "Guerrero").

13. Between March 1, 2004 and April 6, 2004, Guerrero was an employee and agent of First Magnus Financial Corporation d/b/a Charter Funding (hereafter "Charter").

14. Charter is doing business in Gladwin County, Michigan, including arranging the lending of money secured by real property mortgages in Gladwin County, Michigan.

15. Upon information and belief, prior to March 3, 2004, Matkovic and Guerrero commenced a scheme to defraud LaDuke of his home and BNC Mortgage (hereafter "BNC") of its funds.

16. On or about March 3, 2004, effective at 7:00 am, Michigan Title issued title commitment number 04-50133.  Said commitment proposed to provide an owner's title policy to Matkovic for a purchase price of $110,000 and a mortgage policy in favor of BNC in the amount of $88,000.

17. Upon information and belief, on or about March 3, 2004, AMD determined that it would deny LaDuke's mortgage application.

18. Upon information and belief, Matkovic did not advise LaDuke of the denial until several weeks later.

19. Approximately 20 minutes after Matkovic finally advised LaDuke of the

3

denial, Guerrero contacted LaDuke and indicated he could assist LaDuke in obtaining home equity financing for his home.

20. At no time on or before March 31, 2004, did Matkovic or Guerrero advise LaDuke that Matkovic proposed to purchase his home.

21. Guerrero, as an agent of Charter, initiated contact with LaDuke some time between March 3, 2004 and March 31 2004 and led LaDuke to believe that Charter would provide the mortgage financing that AMD, through its agent Matkovic, had denied.

22. On or about March 8, 2004, Guerrero ordered an appraisal from Thomas A. Reinbold of Reinbold and Associates, Inc., d/b/a Residential Appraisal Services, for the premises, which was completed on or about March 11, 2004.

23. On or before March 9, 2004, Charter requested a payoff statement from LaDuke's lender, Homecomings Financial, which provided same to Charter on March 9, 2004

24. On or about March 15, 2004, Michigan Title issued a statement to Charter for its title commitment 04-50133.

25. On or before March 23, 2004, Guerrero and/or Matkovic requested an insurance quote from Farm Bureau General Insurance Company of Michigan to insure the premises effective March 23, 2004, with Matkovic as the owner and occupant of the premises.

26. On or after March 23, 2004, Matkovic and LaDuke allegedly entered into a purchase agreement bearing a date of March 23, 2004 in which LaDuke agreed to sell the premises to Matkovic.

4

27. Upon information and belief, Guerrero prepared said agreement and presented it to the parties for signing.  The terms of said agreement were as follows:

    A.  Price $110,000

    B.  New Loan $88,000;  Mortgage commitment by March 31, 2004

    C.  Seller Financing $16,500

    D.  Closing on or about April 1, 2004

    E.  $250 escrow as security for possession by April 15, 2004

    F.  Earnest money deposit $0

28.  Guerrero misled LaDuke as to the nature of the purchase agreement, leading LaDuke to believe it was a document necessary to the processing of his mortgage.

29. On March 24, 2004, Guerrero generated a Good Faith Estimate and Truth in Lending Disclosure Statement on behalf of Charter for presentation to Matkovic.

30. On or before March 26, 2004, Guerrero and/or Matkovic prepared, or caused to be prepared a mortgage and note from Matkovic to LaDuke for a purchase money mortgage of the premises in the amount of $16,500.

31. On March 30, 2004, BNC issued a mortgage commitment to Matkovic.

32. On March 30, 2004, Guerrero and Kline, co-partners of Premiere Property, submitted a Premiere Property invoice to Michigan Title charging LaDuke for Property Management in the amount of $28,000

33. LaDuke had no knowledge of said invoice, and had no agreement with Premiere Property or its partners for any services, nor did he receive any services from Premiere Property or its agents.

34. On March 31, 2004, Michigan Title conducted a closing of the transaction.

35. At the closing, Matkovic signed the following documents, all of which indicate her intention to occupy the premises as her primary residence after closing:

    A. Estoppel Certificate

    B. W-9 (Request for Taxpayer ID Number)

    C. Occupancy Affidavit

36. One or more of the above documents by their terms were signed to induce BNC to make the loan.

37. At the closing Matkovic signed a Uniform Residential Loan Application prepared by Guerrero indicating the following:

    A. She had resided at 1604 Biltmore for 2 years

    B. She was employed as president of Matkovic Cleaning Services

    C. Her income was $4500 per month

    D. She had three listed assets for a total value of $43,000

    E. She had seven listed liabilities totaling $41960

38. At the closing Matkovic signed the note and mortgage referenced in Paragraph 30, with the date altered by hand to March 31, 2004.

39. At the closing Matkovic signed a mortgage on the premises and note in favor of BNC in the amount of $88,000, with monthly payments of $603.90

40. At the closing Matkovic and LaDuke signed various other standard closing documents.

41. Pursuant to the alleged purchase agreement LaDuke was to receive a

mortgage note from Matkovic in the amount of $16,500, with monthly payments to LaDuke in the amount of $191.58; and approximately $38,500 cash.

42. At the closing Michigan Title acted as LaDuke's closing agent and retained a fee of $250 from LaDuke which was the only settlement or closing fee charged to any of the parties.

43. At the closing Michigan Title disbursed $8836.08 to LaDuke.

44. At the closing Michigan Title disbursed $28,000 to the Guerrero and Kline partnership Premiere Properties.

45. At the closing, Michigan Title did not retain the occupancy escrow of $250.

46. After the closing, Michigan Title did not record the Matkovic/LaDuke mortgage securing the $16,500 note.

47. Upon information and belief, Michigan Title returned the original note to Matkovic.

48. On or about April 6, 2004, Guerrero entered into a Residential Lease With Option to Purchase with LaDuke.

49. The two year lease required monthly payments of $859.07 with a 5% credit toward a purchase price of $90,000.

50. In part because the payment on said lease was nearly twice his previous mortgage payment, LaDuke was unable to remain current.

51. Matkovic failed to make payments on the underlying mortgage.

52. On or about September 23, 2004, Matkovic and Guerrero initiated a summary proceeding action which resulted in a transfer of the action to 55th Circuit Court.

53. On or about November 8, 2004, Matkovic filed a chapter 7 bankruptcy action in the Western District of Michigan.

54. As part of the bankruptcy, Matkovic filed a Statement of Intention that she would surrender the premises to the secured party.

55. Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is a foreign corporation, doing business in Gladwin County, Michigan, including acting as the nominee of lenders of money secured by real property mortgages in Gladwin County, Michigan, and initiating foreclosure proceedings against the premises.

56. MERS sought and obtained from the bankruptcy court, the entry of an order granting relief from stay as to the premises on January 4, 2005.

57. MERS has established a foreclosure sale date of February 25, 2005.

58. Despite her stated intention to reside in the home, Matkovic had no actual intention to do so. Nor did she intend to purchase the premises as a business or investment property. She anticipated that LaDuke would make payments sufficient to cover the BNC mortgage loan, and obtain other financing within two years.

59. Matkovic and Guerrero , being aware of LaDuke's poor financial condition, conspired to liquidate and retain LaDuke's equity in the premises, resulting in a gross discrepancy between the benefit received by LaDuke for his home and its true value which Reinbold appraised at $110,000.00

60. The warranty deed executed by LaDuke on March 31, 2004 was intended to serve as a security for the $59,905.81 received from Matkovic; to wit: the payoff of LaDuke's underlying mortgage balance of $51,069.73, and a cash payment of $8836.08 received at closing.

61. By virtue of the foregoing, the warranty deed executed by LaDuke to Matkovic was in fact a mortgage to secure the funds paid to LaDuke or on his behalf.

62. That in order to obtain funds, Matkovic intentionally made misrepresentations along with Guerrero, individually and as agent for Charter, committing fraud by misrepresenting various aspects of the transaction.

63. LaDuke was a victim of Matkovic's and Guerrero's fraudulent scheme.

64. BNC and MERS claim to hold a mortgage on the premises by virtue of a mortgage document executed by Matkovic on March 31, 2004 and recorded at Liber 719 Page 802, Gladwin County Records.

65. Matkovic's interest in the property on March 31, 2004 should be limited to that of an equitable mortgagee securing the $59,905.81 paid to or on behalf of LaDuke.

66. The amount demanded by BNC and MERS is $91,536.94 and is based on a mortgage amount of $88,000.00.

## COUNT I
### FALSE REPRESENTATIONS, ACTUAL FRAUD AND MISREPRESENTATIONS
### 11 USC 532 (a)(2)

67. Plaintiff incorporates be reference all previous paragraphs.

68. Defendant obtained an interest in Plaintiff's property by false pretenses, false representations and actual fraud.

69. Defendant, together with Guerrero, misrepresented facts to Plaintiff with the
    intent
that he rely upon the misrepresentations.

70. On information and belief, Defendant was aware of Guerrero's misrepresentations and did nothing to object to them.

71. On information and belief, these representations made by Defendant and Guerrero to Plaintiff were false and misleading.

72. Plaintiff relied on the misrepresentations.

73. Because of the misrepresentations, false pretenses and actual fraud by the actions and/or inaction of Defendant, Plaintiff has suffered financial losses.

## COUNT II
### FRAUD WHILE ACTING IN A FIDUCIARY CAPACITY
### 11 USC 523(a)(4)

74. Plaintiff incorporates be reference all previous paragraphs.

75. Defendant Matkovic, allowed confidential personal and financial information regarding LaDuke to be released to Charter and its agent Guerrero without LaDuke's knowledge or permission, in violation of LaDuke's privacy laws.

76. The information obtained allowed Matkovic and Guerrero to further their scheme to defraud LaDuke.

77. Plaintiff LaDuke was injured as a result of the improper release of confidential matters.

## COUNT III
### WILLFUL AND MALICIOUS INJURY BY DEBTOR
### 11 USC 523(a)(6)

78. Plaintiff incorporates be reference all previous paragraphs.

79. Defendant willfully and maliciously caused damage to Plaintiff and Plaintiff's interest in his residence.

80. Plaintiff LaDuke was injured as a result of Defendant's actions.

WHEREFORE, the Plaintiff prays for the entry of a Judgment granting LaDuke the following relief:

A. Declare that the Plaintiff's claim in the amount of $50,094.19, plus interest, costs and attorneys fees be deemed non-dischargeable; and,

B. Grant any other relief that the Court deems just and proper.

>UAW-GM LEGAL SERVICES PLAN
>Attorneys for Plaintiff, LaDuke


>/s/ TERRI S. MACKLIN (P.38785)
>4433 Byron Center Ave., SW
>Wyoming, MI  49519
>Telephone:  (616) 531-7722

Dated:  March 1, 2005